Case number 23-5053, the American College of Pediatricians et al. v. Xavier Becerra et al. All arguments not to exceed 15 minutes per side. Mr. Christopher Paul Chandevaux for the appellants. Chandevaux, good morning. Good morning, your honors. My name is Chris Chandevaux with Alliance Defending Freedom. I represent the American College of Pediatricians and the Catholic Medical Association. I've asked to reserve five minutes of my time for rebuttal. May it please the court. The federal government's radical interpretation of Section 1557's prohibition on sex discrimination threatens to drive thousands of conscientious medical providers out of the practice of medicine altogether. And if this court accepts the government's conclusory claim that my clients do not face a credible threat of enforcement simply because the government promises to follow the law, simply because they promise in particular to follow RFRA, this court would be sounding the death knell of pre-enforcement challenges across the board. Instead, this court should reject that argument and hold that my clients do face a credible threat of enforcement for the following reasons. Number one, the government has repeatedly promised to enforce its gender identity mandate broadly to require the specific types of treatments and procedures that my clients object to. How do you say that in terms of the notification document, which is quite vague? Your 22 items are quite specific. I'll certainly ask your adversary as to what their position is as to those, but reading your specifics and their vague statement, how do you connect those to get, you used the term, a credible threat of enforcement? And let me just tie that to the two phrases I usually looked at were certainly impending or substantial risk. Where do you put credible threat relative to those other two? Is it just a nomenclature difference or is there a legal difference between those different statements? We think that the Supreme Court made clear in Clapper that it really is just a nomenclature difference. Unfortunately, the district court in this case, we think, applied it as if it was a legal difference. Which one should we look at? A substantial risk is the standard that we have cited and asserted. As the Supreme Court made clear in Clapper in footnote five, plaintiffs don't have to show literal certainty of enforcement. For these purposes, let's go with substantial risk. Yes, Your Honor. Tell me how you connect their, what I call vague, maybe you don't think they're vague, and your very specific ones, which certainly are very specific. Right. So I wouldn't use the phrase vague. I would use the phrase broad. So they've made clear in their 2016 rule and then more recently in their 2021 notice of enforcement that they do intend to read covered services broadly to prohibit surgeries, to require surgeries, to require treatment provision of drugs and other gender. In terms of specifics, do you object to the general principle of nondiscrimination in the sense that if a patient comes into one of your members and says, I've got strep throat, and the doc says, well, I won't treat you because you're trans. So we've made very clear in our complaint that our doctors do treat patients in those circumstances. So they set broken bones, they treat for illnesses, et cetera, and make no distinction in the treatment that they provide in terms of gender identity or sexual orientation. So we have a general principle and then the question is how substantial is the risk of these, some of them are very specific procedures like, you know, will you castrate people. Yes, Your Honor. Some of them are, you have free speech arguments on some of them that you want, you fear that they will say that they will bring actions against you if you deny non-binaryness. Yes, Your Honor. So HHS has been explicit and specific in their 2016 rule and then more recently by giving the example of someone coming in and asking for a hysterectomy, that if a provider provides hysterectomies to treat cancer, for example, that same provider would have to provide a hysterectomy. Is the 2016 rule in effect or is that just background? As the 8th Circuit and the 5th Circuit both held in Franciscan Alliance and Religious Sisters, it is in effect and as the federal government in the 2021 notice of enforcement made clear, they interpret that portion of the rule to be in effect because. So then is the injunctions in the 5th and 8th Circuits essentially injunctions against the 2016 rule? They are injunctions against the 2016 rule or any subsequent, our claim is based on any subsequent interpretations or statements that HHS has made making clear that they intend to enforce the provisions of the 2016 rule that are still in force. The reason that we got here procedurally despite the earlier injunction on that 2016 rule is that after the U.S. Supreme Court decided Bostock, President Biden issued a statement saying he is going to interpret Section 1557 to prohibit discrimination based on sexual orientation and gender identity. HHS subsequently in May made it clear that is the way they interpret that. I call the vague, but it is the two-page federal register notice. Yes, but it is very broad and it is intentionally broad. They also had a notice of proposed rulemaking, but that has not gone into effect. That is correct, Your Honor. That has not yet gone into effect. We would ask the court in this case to issue a ruling in good speed so that we don't run down the road in a situation where the federal government is arguing, well, now we have this new rule, so we have to redo the entire standing analysis. This court needs to make clear in this case that my clients do face a credible threat of enforcement. The district court misread this court's case law as to what showing is required to prove a credible threat of enforcement. One, by reading out that substantial risk language from the Supreme Court's case law. Who your best member, associational member is to prove your standing? I see there are two elements. One, is there a member of one of these associations who is going to violate the law? Two, is the government going to enforce the law? I might be sympathetic to you on the enforcement part, although I want to hear from the government as well. Who is the best plaintiff that demonstrates the likelihood of violating the law in a way that it will be enforced? Is it Kaiser? So in terms of identified members, we do think that we were the most specific as to her injury, and that's at record 15 in our First Amendment complaint. Page ID 161, paragraphs 231 and 232. Which person? Dr. Kaiser. And that's at, again, page ID 161. She's a member of the CMA. She's a member of the CMA. She states in paragraphs 231 that she always lists her patients by their biological sex in her charting, and she asserts that she has encountered patients who have said that their gender identity differs. She's an emergency room doctor. She's an emergency room doctor. She's getting all types of patients. Getting all types of patients. She says that she cared for one patient presenting, identifying as female, where the patient was presenting with a diagnosis involving a prostate issue, so a biological male presenting as female. She asserts she always charts and treats them and talks to them based on biological sex. She herself had one patient in the past. She herself did have one patient. More broadly, we have alleged that many of our members do treat patients with gender dysphoria and presenting as members of the opposite sex. But in terms of specific members we've identified, hers are probably the most specific. For all of the members we've identified, we have alleged that they have in the past practiced medicine consistent with ACP's and CMA's sincerely held beliefs about what good practice of medicine is, and that they wish to continue to engage in those practices in the future. So we think that those broad statements as to the way they practice medicine, have practiced medicine, and wish to continue to practice medicine, do encompass all of the more specific claims that we've made as to our clients more broadly, ACP's and CMA's. With respect to Dr. Kaiser in particular, just because I don't have the list here in front of me, the one patient that you've highlighted here, which of the 22 items on the list does that fall into? All of the items on the list that we identified involving speech, which is the latter portion of that list of 22 objections, would involve her. Because she is, one, prohibited from making statements and explaining her beliefs about so-called gender-affirming care, and that such treatment is not appropriate for patients, or not in the best interest of patients. She's also required to chart based on preferred pronouns, and she's required to give assurances to the federal government that she is complying with all of these requirements under their version, their interpretation of this gender identity mandate. But just to be clear, Your Honors, pre-enforcement standing does not require any individual plaintiff to assert that they have violated the law in the past. That's the whole purpose of pre-enforcement standing, is just that they intend to engage in conduct that's arguably prescribed by law. It's arguably affected with a constitutional interest, and they do face a credible threat of enforcement. The U.S. Supreme Court and multiple courts of appeals have held. There doesn't have to be. We have one emergency room doctor, and we're supposed to find standing on the basis that someone someday may come in with some issue that requires this doctor to violate one of the 22. Well, the injury is not just based on that someone someday may come in and ask for these treatments. It's also based on the fact that Section 1557 and the regulations require my clients to make affirmative assurances that they're following the government's interpretation of what Section 1557 prohibits. They're not able to make those affirmative assurances right now based on the federal government's... How do they make those affirmative assurances? Do they sign something they submit to the government? The regulation requires them to make those assurances. I'm not sure the exact process or procedure out there. Is there a reporting requirement ahead of time? Do they verify they'll comply with 1557? Again, I'm not sure the exact process. If you're making the point that this is some important thing they have to do, I guess I would... Right. I could cite the court to the Federal Register where they do actually walk through the fact that they are required to make these assurances. I'm just wondering functionally how they make them and how... Right. We haven't alleged the exact function of how they make them, but in addition to the fact that they're required to make the assurances... It would be important if they... An annual... I hereby swear that I am not now nor ever have been a member of the Communist Party or whatever. Right. Right. A loyalty oath or... Right. Again, I can look for that in the Federal Register and get you the best that I can on rebuttal. Otherwise, the emergency room doctor is the best example you have. In terms of identified members, that's the most specific allegations that we have in the complaint. In your defense, the government really didn't argue this. I realize we're on standing, so we have to reassure ourselves that we have jurisdiction, but the government didn't really argue this in the district court. The government has not argued associational standing, and so if the court wants additional briefing on that particular question, we'd be happy to brief it more thoroughly. In the district court, it seemed to focus really on the enforcement point, which has been the main point in the Fifth and the Eighth Circuit case. Right. Right, right. But now in our court, they have raised the issue that you haven't really identified a member of the association who's shown sort of a concrete or substantial likelihood of violating the law and having the law enforced. Right, Your Honor. And we think it's enough that these doctors, all of the members that we identified, are receiving federal funding, so they are at risk of losing their federal funding if they violate the government's interpretation of what that mandate requires. And they've all asserted, they've all asserted that they have practiced medicine in the past in a manner that's consistent with CMA's beliefs and ACP's beliefs, and that they wish to continue practicing in that way in the future. We don't think that any of this court or the Supreme Court's pre-enforcement case law requires plaintiffs to come into court and say, I have violated the law in the past. Let me be very specific about the ways in which I violated that law so the government can come after me going forward. Or at least specific about how it will be violated in the future, that they're going to actually see patients. I mean, in the Fifth Circuit case, I think it was the Fifth Circuit case, either the Fifth Circuit case or the Eighth Circuit case, there was a declaration from a doctor actually in Columbus who was very specific about the procedures and practices and very likely to see these kinds of patients and this was definitely going to be an issue. And that was a summary judgment in that case, so there was maybe more of a chance to develop the record. But your statements don't go that far. I'm not saying they're not enough, but they don't go that far. Right, but given the broad reading the federal government has as to what Section 1557 requires, the moment that any patient walks in and starts, you know, I identify this way, that patient... Whether any patient walks in, it's not something the district court looked at. It's one of the questions on my mind. Right, that's not an issue that we litigated below because the district court wasn't concerned about that specifically. And again, we'd be happy to provide additional briefing if the court would like it on that issue. But based on the broad reading that the federal government has not disavowed their intent to enforce any of the 22 objectionable practices, so that was part of my answer to Judge Boggs' question earlier, is that we filed this complaint 2½ years ago. They've had 2½ years to disavow any intent to enforce any of those objectionable practices against my clients. They've not disavowed an intent to enforce any of those objectionable practices. They also haven't enforced, right? They also haven't enforced, to your knowledge. They've not enforced against our clients, to our knowledge. They have stated more recently in 2022 that they are actively investigating and enforcing this gender identity mandate. I'm sorry, what's the basis of what you just said in 2022? Is that just a newspaper statement? No, they issued a notice and guidance in 2022 that we have cited in our brief where they've asserted that they are actively investigating and enforcing. Was that available below? So it came after we filed the complaint. So it wasn't available below as something that we could cite to in our complaint, but we do think that it bolsters... Is that cited in the briefs? It is cited in the briefs, Your Honor. But we do think that even though it wasn't something available that we could cite in the complaint, it does go to their refusal to disavow. Not only are they not disavowing, they're admitting that they are actively enforcing and investigating. Okay, this is the notice and guidance of March 2, 2022. It's cited briefly at page 36 of your brief. Is that what it is? That's correct, Your Honor, where they assert that we are actively investigating and enforcing violations of this gender identity mandate. Is that something... Okay, for that, you're citing Franciscan Alliance quoting the notice. Franciscan Alliance did quote the notice. That notice is not in the Federal Register. Is this like what in Title IX we call a dear colleague letter or manual material or just what is it? So I believe... Title notice and guidance? Yes. I think it's a guidance document. It is, and it is in the Federal Register at volume 86, starting at page 27,984. So that is the same document because the Federal Register citation isn't on page 36. Sorry, so that's the notice of interpretation and enforcement of Section 57? Oh, yeah, I know. The notice, I know, that's the Federal Register. Subsequent, so that's... The quote notice and guidance is not in the Federal Register. To my knowledge, correct, Your Honor. Okay, that's fine. Sorry. We think that bolsters the conclusion that not only are they refusing to disavow, they are explicitly stating that they are actively enforcing. Of course, they're not opening up their enforcement records to us so we can see who they're enforcing against or how often they are enforcing it. But they have conceded on appeal on page 42 of their brief. Yes, Your Honor. I'll save whatever remaining time the Court might give me. Thank you, Your Honors. Now we'll hear from the government. Neumeister. Thank you, Your Honor. May it please the Court, McKay Neumeister on behalf of the government. Plaintiff's challenge is premised on the notion that HHS has imposed a gender identity mandate specifically requiring their members to engage in a list of 22 specific Objective 2 practices. But this mandate does not exist. You won't find it in any agency rule or guidance document. Instead, what we have is a general principle announced by HHS that it interprets sex discrimination under Section 1557 to encompass gender identity discrimination consistent with the Supreme Court's holding in Bostock. However, without a concrete factual context in which to apply Section 1557, we can't assess whether the refusal to engage in any of plaintiff's practices would amount to unlawful discrimination under the circumstances, particularly because the application of RFRA can require altering the statutory obligations that would otherwise be generally applicable. At this point, the plaintiff's associations have not shown either a substantial probability that any of their identified members will actually engage in conduct prescribed under Section 1557 as applied in light of RFRA. Did you argue that point in the district court? No, Your Honor. We did argue that RFRA affects whether conduct is prescribed under the statute. We didn't focus specifically on the allegations to these complaints and the likelihood. Dr. Kaiser, whether Dr. Kaiser meets the standard. In other words, I know you don't necessarily have to assure ourselves of our jurisdiction, but it's less helpful that the district court didn't have a chance to pass on these issues, on that issue. I understand that, Your Honor, but as the court noted, we have focused on... I apologize. As was discussed earlier in the call with my friend on the other side, we were focusing on likelihood of a credible threat of enforcement in this case and in the other cases. And on appeal, we are still pursuing that argument as well as pointing out that under this court's cases, there has to be a substantial probability that one of their identified members will actually engage in this conduct. It was their burden to demonstrate that at the time of their complaint that they had a specific member that fell into that category, and they simply haven't. Especially the speech-related ones toward the latter end of their list of 22. Isn't their statement that that's their position and that they wish to espouse it? Because some of the ones, the way they stated at least, are not even patient-related. That is, if they write an op-ed saying that I believe that there are only two sexes, they fear that that will be taken as discrimination. So it seems to me you should focus... Wouldn't it be better to focus more on the substantial risk side in terms of what's HHS really going to do? Your Honor, I don't read their allegations to go quite that far that that's what they're concerned about. They talk about speech in the context of interacting with their patients and using pronouns and discussing various treatments. I don't understand them to be worried about publishing something in the abstract, particularly as injuring them. But in any event, they don't allege that they intend to do this, that they have a history of doing this, that this is something that they will actually engage in and that they are being chilled from doing so. It's important to note as well, there are no allegations of any chilling with respect to the specific identified providers in this case. Rather, time and time again, plaintiffs assert that their members are not being chilled. Particular members that they've identified are going to continue engaging in their practices. They're not going to engage in their list of objectionable practices. And so there is no chill at this point in time that could help bolster standing. But turning to the threat of enforcement, Your Honor, they simply have not done enough at the time that they filed their complaint to show that at that point in time, there was an imminent substantial likelihood that they were going to be subject to an enforcement action if they engaged in prescribed conduct. Let me ask you about enforcement action because at least part of the brief, you sort of say, well, somebody would have to make a complaint. I'm going to have to come in. They make a complaint. And then you run all the way to the loss of funding. But isn't the very investigation part of the harm? Sometimes the line is the process is the punishment. So if the standard is substantial risk of harm, wouldn't at least somewhere along that continuum of investigation be a harm that we should at least think about? So the harm that the standard is talking about is an Article III injury. And so plaintiffs would have to demonstrate that being subject to an investigation alone is working on them an Article III injury. And I don't believe that they've cited anything to demonstrate that being subject to that kind of administrative process rises to the level of an Article III injury. Is there any law either way on that? I'm not aware of anything specific, Your Honor, although I will note in the SBA list case, the Supreme Court declined to say that merely being subject to a complaint was an Article III injury. It was both the fact that they could be subject to a complaint and have to respond to it, the fact that under the circumstances of that case, it would impede a candidate's ability to be campaigning for office, and also at the end of the process, there would be criminal penalties. And the Supreme Court said, we don't need to say whether the complaint, responding to the complaint alone, is an Article III injury. We have these other things. And so that case certainly does not support the notion that responding to a process alone is an injury. And this is, in fact, just part and parcel of agreeing to accept federal funding and being subject to the conditions thereunder that regulated entities would have to go through. Am I right that the government, or you, or any place along the process, has neither affirmed nor denied that it would enforce against the 22 items? The government has not taken a specific concrete position in any issuance that these specific items are prohibited under the agency's... You haven't denied it, right? You haven't denied it. We haven't, Your Honor. But I think it's important to look at the effect of that decision and what plaintiffs are calling a lack of a disavowal. As this Court's cases demonstrate, that factor is very context-dependent. Whether or not the government's refusal to disavow should be given particular weight. In the McKay case, the Court said, under the circumstances, that factor wasn't particularly probative. How do pre-enforcement challenges work in your view of the law? Because they're supposed to be pre-enforcement, so there's been no enforcement. How does it work? What more has to happen for the plaintiffs to have standing from an enforcement perspective? Well, Your Honor, this Court says there has to be a sufficiently imminent injury, and so it requires looking at the particular facts of a case and the various non-exhaustive factors the Court has articulated to determine whether it's substantially likely that there will be an enforcement. What would make this case more substantially likely? Any number of things, Your Honor. If plaintiffs had satisfied their burden of identifying a past history of enforcement here, if... But that's like, this is pre-enforcement. This is pre-enforcement, so... Somebody's got to be first. Yes, Your Honor, and another way that that can happen pre-enforcement is if there's a warning letter that a particular entity has been subject to a letter saying, we are starting this investigation, or perhaps there has been a determination that there's probable cause or something. That's more like enforcement. That's quasi-enforcement. Well, it is a factor, though, Your Honor, that the Court looks at. I just don't understand. You went through the trouble of issuing this regulation that says you're going to enforce it. You sent out, then there's this guidance letter that says you're going to enforce it. If you work at the Department of HHS, there's a pronoun mandate that requires you to use pronouns or you get fired. This is a very important aspect of the administration itself, these gender identity issues. It's just hard to believe that you're not going to enforce the law given everything that's been said and done. And I'm not sure what more... I'm not sure... I just don't understand your view of the pre-enforcement challenge, what more needs to happen, other than like actual enforcement is what you're telling me. But that's not really a pre-enforcement challenge then anymore. Your Honor, but it's simply not the agency's burden to prove that it will not enforce the statute. It's plaintiff's burden to show that it's substantially likely... Okay, so plaintiffs are showing all the things I just listed. Yes, Your Honor. And they simply don't amount to a sufficiently imminent injury against these plaintiffs. And I think it helps to look at the sort of... I'd ask your adversary about different wordings here. You use imminent a lot. Do you disagree with that substantial risk is the best standard? We don't disagree, Your Honor. We think that substantial risk is another way of saying something is only impending or sufficiently imminent. Sorry if I'm pre-permitting, Judge. Did you get the answer you wanted? Well, you said you're turning to these specific plaintiffs. So if you're going to say, because you don't think these specific plaintiffs are going to do something that's in violation, that goes to the issue we talked about at the beginning about their actual conduct and what kind of patients they serve. I'm real still focused on the enforcement piece of it because I'm just not... I don't understand why you wouldn't enforce it against these... With one, maybe they don't violate it. Maybe it's quite hypothetical if they would actually... One of these 22 violations would actually... They'd have to be required to do it. And I think that it's that word. It's the hypothetical nature of this exercise that shows that we just don't have enough likelihood of enforcement, particularly because of the application of RFRA in this context. As the Supreme Court recognized in Bostock, RFRA alters the normal functioning of a statute, and it alters the statutory obligations such that religious objectors can be subject to different obligations under a statute. The agency applies RFRA to 1557. If any entity ever raised a RFRA objection to an investigation, the agency would adjudicate that. And so it's simply not clear... You're saying you'll follow the law. I mean, I would assume that the government's going to follow the law. You're basically saying you're going to follow RFRA as like we're going to follow a federal statute. I assume you're going to follow all federal statutes in terms of enforcement. So that's not a lot of guidance to the plaintiffs in terms of what they can and can't do. And right now, the guidance that plaintiffs have comes from the notice that the agency's position is that it interprets sex discrimination to include gender identity discrimination. The agency is currently undergoing a rulemaking to issue a 1557 rule... Why don't you just say we're not going to enforce the rule until that rulemaking is done? This would be easy, very easy. Your Honor, the agency doesn't have to disavow enforcement... It won't do anything. It won't do anything to help these plaintiffs. It won't do anything. And RFRA requires a balancing of the compelling government interest and the least restrictive means. Those are really uncertain concepts. Even if we know you're going to follow RFRA, how are the plaintiffs supposed to know if you view this as the least restrictive means? And the agency simply doesn't know that until it's presented with a concrete factual context... Well, neither do the plaintiffs. I'm less worried about what the government knows or thinks it knows than what the plaintiffs know. And in the interim, Your Honor, the plaintiffs simply are not harmed by the lack of further clarity. As courts have said time and time again, mere uncertainty about the application of a statute doesn't constitute hardship under the ripeness inquiry. And at this point in time, the individual plaintiffs that have been identified are not self-censoring, are not changing their behavior. They say that they're going to follow their beliefs and not engage in these practices, and so they simply aren't harmed. If at any point in time in the future a complaint is filed against them, the agency can then adjudicate all of plaintiffs' arguments. At that point in time, there will be a factual context sufficient to apply RFRA and determine whether 1557 has actually been violated in light of the effects of RFRA. Let me ask you this to sort of... This is sort of my take on it. You have what happens in a lot of public policies. Something happens, and then people that don't like it say, it's a parade of horribles. All these terrible things are going to happen if you enforce a statute. And then the question is, what happens as you concretize it? Well, here, you know, there's been a lot of public activity. You've had the notice, which I called vague, they called broad. The guidance document, is the guidance document any more specific than the Federal Register notice, really? I did not look it up. The guidance document just is a general statement. Okay, so what you've got here is a parade of horribles, but on the other hand, you have the government and you have interest groups that have shown some interest in being vigorous against people. And I take it the government has not made any effort to disavow, let us say, any of it. So where does that leave us in terms of substantial risk? I sort of put it for the strep throat on one end and the castration at the other end of the spectrum. And can we say that there's a substantial risk for some of them and not for others? Or we just have to wait until something happens? At this point in time, there isn't a substantial risk of enforcement against these plaintiffs for any of these practices that they have identified. Ultimately, what plaintiffs did is they came up with a list of practices and are trying to get HHS to develop an enforcement policy for these specific practices. That's simply not how Article III works. If plaintiffs would have standing under these circumstances, it essentially opens the courthouse doors to any placement for pre-enforcement review. Can I add to your discussion with Judge Boggs? Because the guidance says, as a law enforcement agency, OCR is investigating and, where appropriate, enforcing Section 1557. So there's a little more meat on the bone here than just sort of... Do you have any idea what they meant when they say, is investigating? So that statement is a general statement about gender identity discrimination. It's not specific to any form of discrimination. It could be a strep throat investigation. Exactly, Your Honor. But we don't know. We simply don't know. I take it you didn't draft that. That may have been drafted by artificial intelligence. As the District Court recognized, plaintiffs didn't identify in their complaint any specific kinds of enforcement that HHS is engaging in. And under this Court's precedence, the relevant enforcement is enforcement against similar conduct. And plaintiffs simply have not identified any enforcement against similar conduct in this case. Even if HHS is in the process of investigating, it's possible it's for other kinds of conduct. Have they been able to get discovery on that? Depose whoever drafted that? What do you mean in your government document? We don't think that's necessary, Your Honor, particularly because that document was issued in March 2022 after they filed their complaint. And it's very clear under this Court's precedence that they have to show at the time of the complaint they have this sufficiently imminent injury and this credible threat of enforcement such that their fear of future injury is objectively reasonable at that point in time. Ultimately, plaintiffs can't come up with a mandate, claim the government is imposing it against them, sue the government in order to get the government to formulate an enforcement policy that it doesn't already have, and then claim that just because the government can't develop that policy and can't say at that abstract level how the statute might be applied in some future hypothetical situation, that is not a disavowal that alone is sufficient to give plaintiffs standing. The government could say we're going to issue our enforcement policy in 180 days and until then we won't enforce the rule or the regulation. I mean, there's lots of things the government could do. I don't disagree with some of the points you're making, but there's also a lot the government could do. And they're really not doing much to help the plaintiffs at all. There's definitely some saber-rattling. The government could do more here to help us out. Any general statements that the government makes that it's going to enforce its statutes are simply only general statements. They're not threats against these plaintiffs. These plaintiffs aren't currently harmed. They're not chilling their activity. They're not changing their behavior. There's nothing that harms them in the interim and would harm them more besides just waiting for an actual factual circumstance to arise in which HHS and the courts can adjudicate the application of RFRA, which is a fact-specific, case-specific inquiry, and adjudicate that application to a particular set of facts to allow the court to assess how it applies. Judge Radler perhaps colloquially said, well, you could say you're not going to enforce the rule or regulation, but I take it there isn't a rule or regulation here. There's the statute, which you obviously are saying you would enforce and it would be hard to disavow enforcing an entire statute, I would think. That's correct, Your Honor. But it would be enforcing the guidance document or, well, as you say, that's untimely, enforcing the notification that's in the Federal Register, and then the question is, what does it mean to enforce a notification? And the general notification itself says it doesn't, the notification itself. Sorry, the what says? Sorry, the notification from the Federal Register says that it doesn't determine any particular outcome of any set of facts. It's just a general policy. It also says that. It's not an adjudicatory document. What was the point of doing it? Simply. I assume the point of doing it was to let people on notice that we'll be enforcing whatever the constellation is of the various rules and regulations that have been vacated over time, that we'll be enforcing them. It was making clear after Bostock, Your Honor, that what the Supreme Court in Bostock said about Title VII, the agency understood that interpretation to also apply to Title IX in 1557 in light of the similarities there. So it was attempting to provide some clarity. Title IX, there's no reason that you should, but we have pending after argument a case also from the Eastern District of Tennessee about education and Title IX. Are you familiar with that litigation and any connection between the two? I'm not. I'm not familiar with that litigation. That also has the similar type of is this really a rule or is it just a general statement? Is it inter-RM or not? Okay. No reason you have to. We've taken a lot of your time. We won't ask you about other cases, unless you want to wrap up. Thank you, Your Honor. No, just to say that under these circumstances, essentially all plaintiffs point to is a refusal to disavow, but they're not entitled to force the government to come up with an enforcement position. They haven't demonstrated that there is a substantial probability that someone will actually engage in conduct that violates the statute, particularly because RFRA will apply where applicable for those individuals. And if refusal to disavow under these circumstances is enough, it will eviscerate the requirements of Article III and open the courthouse doors to any pre-enforcement suit against the government if the government cannot predict how it might apply a fact-specific statute in the future. And for those reasons, we ask this court to affirm the district court. Thank you very much. Thank you. Five minutes for rebuttal. Thank you, Your Honor. A few quick points in rebuttal. First, on some clarifications from the record. Secondly, some points on credible threat enforcement. Third, if I could, I'd like to hit associational standing. First, some points from the record. Your Honor's asked about what these assurances are that are required under the 2016 rule. And I will just say as a prelim to that, Your Honor, the 2016 rule is still in effect after the district court decisions in Walker and Walker-Whitman that came out after Bostock. So it's not just a subsequent notification. It is the 2016 rule that poses a credible threat. But on page 81, Federal Register 31468, Section 92.5, there's a section on the assurances that are required. An entity applying for federal financial assistance to which this part applies shall, as a condition of any application, submit an assurance on a form specified by the director that the entity's health programs and activities will be operated in compliance with Section 1557 and this part. So in submitting the request for federal funding, there's a form that has to be filled out. Do you have to do that each time or each year or just once when you sign up? All I have is what the rule states. I assume it's every time they request federal funding based on the way that that is stated there. They're required to make these assurances, which they cannot make. And to the extent that they do make them, with knowledge that they're not following the federal government's interpretation, they're subjecting themselves. At least now you're not saying that one of your members would not sign that, that he was going to enrote, I know I disagree, but I still want my money. Some of them are not making the assurances. Some of them are making them and putting themselves at risk. Is that in the record? I don't know that we made that specific. We did argue that they cannot make these assurances. Again, because as loyalty oath cases, people would say, I will not sign the loyalty oath, and therefore I would not be hired by the U.S. Right. They've said they can't make these assurances. Is that in the record? I believe that is in the complaint, and I'm sorry I can't give the correct exact reference to it. Secondly, Your Honor, Judge Boggs, you asked about have they made what you call the vague threats of enforcement, and I've said are very broad. So this is at 81 Federal Register 31435, where HHS notes that some commenters ask them to define what health services related to gender transition actually includes. And they've said, we decline to include a definition. We intend to interpret these services broadly. And then they go on to say, the range of transition-related services is not limited to surgical treatments, may include but is not limited to services such as hormone therapy and psychotherapy, which would involve speech, obviously, which may occur over the lifetime of the individual. And they say, we believe this flexibility best serves transgender individuals and covered entities. So that's why we assert that it's very broad and that it does arguably encompass all of the 22 things that we've identified for the court. Third, on the record, this notice and guidance, we did cite it in our district court briefing below in our response to the motion to dismiss at note 1, R55, page ID 1139. So we've been relying on that subsequent notice of guidance. It does show their persistent refusal to disavow, even promise that they are enforcing. But you do agree that we have to measure this at the time of the complaint? Yes, except for the refusal to disavow. And we think that that does go to the refusal to disavow because they say that they're enforcing it right now. In addition to their concession on page 42, that it may very well be possible that they will enforce these provisions against our clients specifically. So they've explicitly conceded that they might enforce these provisions against our clients. On the credible threat of enforcement, I wanted to make the point that I just made that they, on page 42, have conceded that it is to be sure it is possible that they will enforce these provisions against my clients specifically. They've argued that you need a concrete, factual context to do a RFRA determination. The entire years of Hobby Lobby litigation that resulted in the Supreme Court's decision on Hobby Lobby would go out the window if that was the case. Those were pre-enforcement RFRA challenges against the ACA's contraceptive mandate. None of those courts said there's no standing because there's not a sufficient concrete context here. That would be the end of pre-enforcement challenges in the RFRA context if that were the test. And it's clear that what the federal government wants is to preserve for itself the wiggle room to do that balancing test under RFRA on the back end and say, well, we have least restrictive means here given your circumstances. Maybe there aren't providers available that you could refer these patients to. And so to bring a pre-enforcement standing, my clients don't have to show that on the back end of this entire enforcement process, they probably won't be able to be entitled to this defense of RFRA. The exemption that they're claiming is on the front end and is much broader than that. Thirdly, Your Honor, on associational standing, of course, this court recently decided the Association of American Physicians case, which made clear that to bring an associational standing argument, the association has to identify specific members. That's actually the reason why we amended our complaint to identify specific members after that decision came out. But the reason that that case came out the way that it did is because the two members that were identified in that case could not allege that they were at any risk of being punished based on the fact that the FDA had only authorized hydroxychloroquine for certain uses and for distribution from the federal stockpile. The court in that case, this court in that case, said there's no risk of punishment threatened by the FDA. In our case, we do have a risk of punishment, and as to each of these identified members, we've made clear that they each receive federal funding, and therefore they're at risk of losing that federal funding. So we think that distinguishes this case from the American Association case that this court decided recently on associational standing. Unless the court has any further questions, I'm happy to rest on my brief. Great. Well, thanks to both sides. It was a well-argued case, and the case will be submitted. Thank you, Your Honors.